UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Andrew Hollins,

       v.                                       Case No. 2:18-cv-151

South Burlington Police Department,
Officer Sean Pope, Officer Michael DeFiore

### RULING GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS AND DENYING JUDGMENT ON THE PLEADINGS
(Docs. 5, 6, 35)

In September 2018, Defendants South Burlington Police Department ("SBPD") and Officers Sean Pope and Michael DeFiore removed Plaintiff Andrew Hollins's 42 U.S.C. § 1983 suit to this court and filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Docs. 5, 6.) Hollins, representing himself, claims that defendants violated his federal and state constitutional rights during a traffic stop on December 16, 2017 that led to the revocation of his supervised release. (Doc. 11.) In November 2018, Defendants filed a Joint Motion for Judgment on the Pleadings under Rule 12(c), contending that Hollins's claims are barred by collateral estoppel and the doctrine established by the Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994). (Doc. 35.) Plaintiff received multiple extensions to respond to Defendants' motions, *see* Docs. 34, 42, 46, 50, and filed one response in opposition to the individual Defendants' motion to dismiss (Doc. 38). For the reasons discussed below, SBPD's motion to dismiss (Doc. 5) is GRANTED, Defendants Pope and DeFiore's motion to dismiss (Doc. 6) is GRANTED in part and DENIED in part and the motion for judgment on the pleadings (Doc. 35) is DENIED.

## Factual Background

In evaluating a motion for dismissal, a court considers the facts alleged in the complaint, "documents appended to the complaint or incorporated in the complaint by reference, and matters of which judicial notice can be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). A court "may also look to public records," including docket sheets and case law. *Taylor v. Vt. Dept. of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002); *Grega v. Pettengill*, 123 F. Supp. 3d 517, 543 n.6 (D. Vt. 2015) ("a court may take judicial notice of prior pleadings, orders, judgments and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*."[1] (internal quotation marks omitted).)

To his Complaint, Plaintiff attaches the Affidavit of Officer Pope and the Investigative Report of Officer DeFiore, both dated December 17, 2017. (Doc. 1-4.) To their motion for judgment, Defendants attach the docket sheet from Plaintiff's criminal action in this Court, *U.S. v. Hollins*, 5:13-cr-91 (D. Vt. Mar. 23, 2018), the transcript of the January 19, 2018 preliminary revocation hearing, a copy of the Joint Stipulation of the Supervised Release Violation Allegations signed by Plaintiff on March 23, 2018, and a copy of the March 23, 2018 Judgment revoking Plaintiff's supervised release and sentencing him to 24 months' imprisonment. (Docs. 35-2, 35-3, 35-4, 35-5.) Because Plaintiff's criminal case is a matter of public record and relates to his civil claims, the court takes judicial notice of it and the court record.

Plaintiff's February 1, 2018 Complaint, initially filed in state court, alleges that on December 16, 2017, Plaintiff was a passenger in a vehicle that was illegally stopped and subsequently searched by SBPD Officers Pope and DeFiore. He alleges the stop was motivated

---

[1] The definition of the term "sub judice" is "at bar" or "before the court." Black's Law Dictionary.

by his race. *See* Doc. 11 at 10 ("Plaintiff asserts that the color of his skin is what put the whole train of events into effect and that [he] was targeted by the Defendants Pope and DeFiore"). Contraband was discovered in the vehicle and Plaintiff was arrested. He asserts his arrest resulted in an illegal imprisonment. Plaintiff also asserts the SBPD failed to train Officers Pope and DeFiore.

Plaintiff had been convicted of a federal drug offense in the District of Vermont. In 2014, Plaintiff, represented by counsel, pleaded guilty to possession with intent to distribute heroin and cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and was sentenced to a term of imprisonment of 58 months followed by a three-year term of supervised release. *Hollins*, 5:13-cr-91, Judgment (May 19, 2014). The mandatory conditions of his supervised release included the requirement that he not commit another federal, state, or local crime. Plaintiff did not appeal his conviction.

The events of December 16, 2017 were the basis for a December 18, 2017 Petition on Probation and Supervised Release filed in this Court by the U.S. Probation Office alleging Plaintiff violated conditions of his release by (1) possessing cocaine in violation of 18 V.S.A. § 4231(a)(3), (2) traveling to South Burlington, Vermont, and (3) using marijuana. *Id.* (Dec. 18, 2017). On January 19, 2018, the Court held Plaintiff's preliminary revocation hearing at which Officer Pope testified. Plaintiff, represented by counsel, admitted to violations (2) and (3) of the petition and the Court found probable cause as to violation (1). *Hollins*, 13-cr-91 (Jan. 19, 2018); (Doc. 35-3 at 41–43). Plaintiff was detained pending the final revocation hearing. *Id.* at 43. On March 23, 2018, Plaintiff signed and filed a stipulation admitting "the government has sufficient evidence to establish that he violated mandatory condition number one which alleges that he possessed cocaine on December 16, 2017 within the District of Vermont," and agreeing "his supervised release should be revoked." *Hollins*, 13-cr-91 (Mar. 23, 2018) (Doc. 35-4). At

the March 23 final revocation hearing, the Court reviewed and accepted the Joint Stipulation and found that Plaintiff violated the conditions of his supervised release. A Judgment was entered the same day sentencing him to a 24-month term of imprisonment with no supervised release to follow. *Id.* (Doc. 35-5). Plaintiff did not appeal the conviction.

In the instant case, Plaintiff alleges the December 16, 2017 stop and search of the vehicle and his arrest violated his Fourth, Eighth, and Fourteenth Amendment federal constitutional rights and his Article 11 Vermont constitutional rights. He asserts the individual defendants are liable in their individual and official capacities and that the SBPD is liable for failing to properly train the individual defendants. Plaintiff seeks injunctive relief, specifically that "if in the future if the Plaintiff and Defendants Pope or DeFiore are involved in any type of interaction that the Defendants remove themselves from the incident and call for a third party to address the concerns." (Doc. 11 at 10.) He also seeks $250,000 in compensatory and punitive damages.

## Discussion

### I.     Standard of Review

Defendants contend that the Complaint fails to state a claim upon which relief can be granted, and therefore move to dismiss under Rule 12(b)(6). (Docs. 5, 6.) They also contend Plaintiff's claims are barred by *Heck v. Humphrey*, and therefore move for judgment on the pleadings under Rule 12(c). In adjudicating these motions, the court must "accept as true all of the allegations contained in a complaint" and determine whether the complaint states a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) ("In deciding a Rule 12(c) motion, [the court] employ[s] the same standard applicable to dismissals pursuant to Fed. R. Civ. P. 12(b)(6)." (internal quotation marks omitted)).

A document filed by a pro se litigant must be liberally construed to raise the strongest arguments it suggests. *Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012); *see also Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (per curiam) (instructing a reviewing court to afford "special solicitude" to self-represented litigants). While "lenity . . . must attend the review of *pro se* pleadings[,]" self-represented litigants nevertheless must satisfy the plausibility standard set forth in *Iqbal* and Federal Rule of Civil Procedure 12(b)(6). *Harris v. Mills*, 572 F.3d 66, 68 (2d Cir. 2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks omitted). The district court's role "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 113 (2d Cir. 2010) (internal quotation marks omitted); *see also Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) ("The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits.").

## II.  SBPD's Motion to Dismiss

The SBPD moves to dismiss Plaintiff's Complaint under Rule 12(b)(6) and to amend the caption contending that SBPD is not an entity that may be sued. (Doc. 5.) Under Federal Rule of Civil Procedure 17(b)(3), the Court looks to Vermont law to determine whether a governmental entity has the capacity to be sued. There are no statutes or ordinances in Vermont that permits a suit against a municipal police department. This Court has consistently held that

such departments do not have the capacity to be sued. *See, e.g., Bombard v. Volp*, 44 F. Supp. 3d 514, 528 (D. Vt. 2014); *Gorton v. Burlington Police Dep't*, 23 F. Supp. 2d 454, 456 (D. Vt. 1998). The proper defendant for Plaintiff's municipal liability claims would be the City of South Burlington. The SBPD's motion to dismiss is therefore GRANTED; the motion to amend caption is DENIED.

### III. 42 U.S.C. § 1983 Claims

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State[,] . . . subjects, or causes to be subjected . . . [any] person within the jurisdiction [of the United States] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . or other proper proceeding for redress[.]

42 U.S.C. § 1983. The statute is "not itself a source of substantive rights" but rather provides "a method for vindicating federal rights elsewhere conferred." *Patterson v. Cty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (internal quotation marks omitted). To prevail on a claim under § 1983, a plaintiff "must allege (1) 'that some person has deprived him of a federal right', and (2) 'that the person who has deprived [the plaintiff] of that right acted under color of state . . . law.'" *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

Section 1983 occupies a position of "primacy" in providing a "basis for securing redress for constitutional violations." *Pauk v. Bd. of Trustees of City Univ. of N.Y.*, 654 F.2d 856, 865 (2d Cir. 1981). Accordingly, the court considers Plaintiff's allegations of violations of his federal constitutional rights as constituting a § 1983 claim.

### A. *Heck v. Humphrey* and Collateral Estoppel

In *Heck*, the Supreme Court held that a plaintiff cannot use a § 1983 action to expressly or implicitly challenge the validity of a conviction or sentence unless such conviction or sentence had already been reversed, called into doubt by the issuance of a habeas corpus petition, or otherwise invalidated. 512 U.S. at 486–87. "[T]he district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the [§ 1983] complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487. The *Heck* principles have been applied in the context of parole revocations, the corollary of which occurred here, and so may apply. *See Rheaume v. Hofmann*, No. 1:10-cv-318, 2011 WL 2947040, at *4 (D. Vt. June 6, 2011).

Plaintiff has not alleged that his conviction has been invalidated. Indeed, he remains incarcerated. Courts, however, must proceed cautiously when applying *Heck*, particularly where an unreasonable search is alleged. As the Supreme Court has warned:

> [A] suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced [in court] . . . . Because of doctrines like independent source and inevitable discovery, and especially harmless error, such [an action], even if successful, would not necessarily imply that the plaintiff's conviction was unlawful.

*Heck*, 512 U.S. at 478 n.7.

Defendants contend that "the sole source for the information that resulted in the discovery of cocaine was Officer DeFiore's observations, which led to Officer Pope's encounter with the vehicle in which Plaintiff had been a passenger, which led to the request for written consent to search the vehicle, which was freely given." (Doc. 35-1 at 9.) They argue that "if Plaintiff's rights were somehow violated in the process . . . this would not have constituted harmless error; rather his criminal defense counsel could have exploited such error, invoked the

7

Exclusionary Rule, and obtained dismissal of the charges." (*Id.*) "In short, the only way for [Plaintiff's] civil rights claims to proceed would be for him to implicitly challenge the basis for his criminal conviction." (*Id.*) Despite repeated extensions, Plaintiff did not respond to Defendants' *Heck* argument.

The fault in Defendants' argument is that "the exclusionary rule does not apply in the context of revocation of federal supervised release proceedings." *United States v. Hightower*, --- F.3d ---, No. 18-2238, 2020 WL 573376, at *3 (2d Cir. Feb. 6, 2020). Therefore, Plaintiff could not have sought exclusion of the evidence stemming from the alleged violations of his constitutional rights during that proceeding. Accordingly, Plaintiff's suit for damages stemming from Defendants' allegedly unconstitutional actions does not "necessarily imply the invalidity of his conviction" for violation of supervised release. *Heck*, 512 U.S. at 487.

Defendants alternative argument that Plaintiff's claims are barred by collateral estoppel, *see* Doc. 35-1 at 10–13, also fails. Federal principles of collateral estoppel require that: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *In re Snyder*, 939 F.3d 92, 100 (2d Cir. 2019) (internal quotation marks omitted). Collateral estoppel applies to § 1983 civil rights lawsuits, *Allen v. McCurry*, 449 U.S. 90, 101 (1980), and may be asserted by a party other than the government, *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 43 (2d Cir. 1986). However, the legality of the December 16, 2017 stop and search of the vehicle in which Plaintiff was a passenger and his subsequent detention were not determined in the course of the revocation of his supervised release. Therefore, collateral estoppel does not bar Plaintiff's claims.

    B.    **Official-Capacity Claims**

Defendants argue the official-capacity claims against them are subject to dismissal because they are the equivalent of naming the City of South Burlington as the defendant and Plaintiff has failed to establish that the City is itself at fault. (Doc. 6-1 at 4.) Plaintiff responds that his allegation that the SBPD failed to train the officers satisfies both his pleading requirement under Federal Rule of Civil Procedure 8 and his burden under "*Monell* where one of several circumstances may be found making a municipality aware that its policy may be unconstitutionally applied by inadequately trained employees but the city consciously chooses not to train them." (Doc. 38 at 6.)

"A claim asserted against an individual in his official capacity . . . is in effect a claim against the governmental entity itself, rather than a suit against the individual personally, for 'official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 n.55 (1978)). The court therefore analyzes Plaintiff's official-capacity § 1983 claims against Defendants Pope and DeFiore as claims against the City of South Burlington.[2]

A municipality may be held liable under § 1983 "only if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014). Thus, to hold a municipality liable under § 1983 for the unconstitutional actions of its employees, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*,

---

[2] The Court focuses on § 1983 damages claims because the general rule articulated in *Lore* does not apply to claims seeking injunctive relief to remedy an ongoing violation of federal law. *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 498 (N.D.N.Y. 2017).

490 F.3d 189, 195 (2d Cir. 2007) (internal quotation marks omitted). To state a claim based on a municipality's failure to train or supervise, a plaintiff must allege facts tending to show that insufficient training or supervision was a result of deliberate indifference to constitutional rights. *Okin v. Village of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 440 (2d Cir. 2009). To establish deliberate indifference, a plaintiff must "identify a specific deficiency in the city's training program and establish that the deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." *Amnesty America v. City of West Barre*, 361 F.3d 113, 129 (2d Cir. 2004) (quoting *City of Canton v. Harris*, 489 U.S. 378, 392 (1989)).

Here, in the absence of facts or circumstances in support of his claim, Plaintiff's bare statement that the SBPD failed to train its officers does not suffice to adequately allege the existence of a municipal policy.[3] *See Davis v. City of New York*, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002), *aff'd*, 75 F. App'x 827 (2d Cir. 2003) ("In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'"); *see also Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("a pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train.") (internal quotation marks omitted). Even if the Court were to accept that Plaintiff adequately alleged the existence of a municipal policy, he has not plausibly alleged a causal relationship between a policy of failing to train and his alleged injuries. *See Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) (describing the "stringent causation . . . requirement[]" the Supreme Court applied to a claim of failure to train in *City of Canton*).

---

[3] Although the Second Circuit has admonished that courts should "not condone racially motivated police behavior" and must "take seriously an allegation of racial profiling," *United States v. Davis*, 11 F. App'x 16, 18 (2d Cir. 2001), Plaintiff's general and conclusory allegations are insufficient to establish any plausible claim of municipal liability based on a policy of racial profiling. *See Connick*, 563 U.S. at 62.

Accordingly, Plaintiff's official-capacity claims against the individual Defendants, construed as a municipal liability claim against the City, must be DISMISSED.

## C. Fourth Amendment Claims

Plaintiff asserts a § 1983 claim against the individual Defendants for unlawful search and seizure under the Fourth Amendment. Essentially, he alleges Defendants lacked reasonable suspicion for the traffic stop. (Doc. 11 at 5, ¶ 9.) Defendants Pope and DeFiore seek dismissal of the Fourth Amendment claims against them under only the *Heck* and collateral estoppel doctrines. *Compare* Doc. 6-1 at 24 ("the only individual-capacity claim that should remain is the Fourth Amendment against Officers Pope and DeFiore") *with* Doc. 35-1 at 11 ("While we await decisions [i]n the . . . Motions to Dismiss, the Defendants respectfully seek judgment on the pleadings pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), and the common-law doctrine of collateral estoppel.").

"The Fourth Amendment permits brief investigative stops . . . when a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity or a traffic violation." *United States v. Diaz*, 802 F.3d 234, 238 (2d Cir. 2015) (internal quotation marks omitted). Though a "mere hunch" is insufficient, the "reasonable suspicion" standard requires "considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Navarette v. California*, 572 U.S. 393, 397 (2014) (internal quotation marks and citation omitted). It does, however, require "some minimal level of objective justification." *Diaz*, 802 F.3d at 239 (internal quotation marks omitted). The objective inquiry asks "whether a reasonable officer would suspect unlawful activity under the totality of the circumstances" and disregards the officer's subjective motivation. *Id.* ("The objective reasonableness of an officer's suspicion preceding any given

11

traffic stop depends on the totality of the circumstances leading to *that* stop and on the traffic law at issue.").

Here, Plaintiff asserts Defendants did not have "proper justification for the stop," and further claims the subsequent search of the vehicle and seizure of his person were unreasonable. (Doc. 11 at 5, ¶¶ 9-10.) Although Plaintiff's assertions are belied by the affidavit of Officer Pope and report of Officer DeFiore that Plaintiff attached to the complaint, *see* Doc. 1-4, at this stage of the litigation, the Court must accept them as true. Because the Court has not converted either of Defendant's motions for dismissal into a summary judgment motion, it does not consider these materials for their truth. Should Defendants file a motion for summary judgment, Plaintiff will be required to submit evidence, such as witness statements or documents, countering the facts asserted by Defendants in these materials. Because the Court has found that neither the *Heck* rule nor the collateral estoppel doctrine require dismissal, and Defendants did not seek dismissal on failure to state a claim on qualified immunity grounds[4], Plaintiff's Fourth Amendment claims against Officers Pope and DeFiore in their individual capacities survive dismissal at this stage.

**D.     Eighth Amendment Claim**

Plaintiff asserts his arrest on December 16, 2017 violated his Eighth Amendment rights. The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. Defendants argue Plaintiff cannot state a claim for violation of his Eighth Amendment rights because those rights only arise after an individual has been formally adjudicated guilty. (Doc. 6-1 at 7–8.) The Court agrees. Plaintiff cannot state a claim for an Eighth Amendment violation stemming from his arrest on December 16, 2017

---

[4] In determining immunity, the court would be required to continue to accept the allegations of the complaint as true. *Kalina v. Fletcher*, 522 U.S. 118, 122 (1997).

because he was a pre-trial detainee at that time. *See Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (noting the protections of the Eighth Amendment apply only after conviction). Accordingly, Defendants are entitled to dismissal of Plaintiff's Eighth Amendment claim.

### E. Fourteenth Amendment Claim

Defendants argue Plaintiff has failed to state a plausible claim for violation of his Fourteenth Amendment rights to equal protection under the law because the "Complaint alleges no facts to support [his] speculative and conclusory allegation." (Doc. 6-1 at 8.)

The Fourteenth Amendment includes an equal protection guarantee, which essentially directs "that all persons similarly situated should be treated alike." *City of Cleburne, v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). To state a race-based § 1983 claim under the Equal Protection Clause, "a plaintiff must allege that a government actor intentionally discriminated against him on the basis of race." *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d. Cir. 2000).

Here, Plaintiff asserts the individual Defendants "targeted" him because of "the color of his skin." (Doc. 11 at 10.) In the absence of further factual allegations, Plaintiff's bare allegation does not plausibly give rise to a claim of racially motivated discrimination. *See Garzon v. Jofaz Transp., Inc.*, No. 11-CV-5599, 2013 WL 783088, at *3 (E.D.N.Y. Mar. 1, 2013) (dismissing claim where allegations did "little more than cite to [plaintiff's] mistreatment and ask the court to conclude that it must have been related to . . . race"). Accordingly, Defendants are entitled to dismissal of Plaintiff's Fourteenth Amendment claim.

## V. Request for Injunctive Relief

Plaintiff seeks an injunction requiring the individual Defendants to remove themselves from any future contact with Plaintiff and to call for a third party to address any concerns. Defendants move to dismiss the claim arguing Plaintiff fails to demonstrate that such relief should be granted. (Doc. 6-1 at 13–19.)

"[I]njunctive relief is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 31 n.5 (2008). Federal Rule of Civil Procedure 65(d) provides that "[e]very order granting an injunction . . . must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1).

> To comply with the specificity and clarity requirements, an injunction must be specific and definite enough to apprise those within its scope of the conduct that is being proscribed. This rule against broad, vague injunctions is designed to prevent uncertainty and confusion on the part of those to whom the injunction is directed and to be sure that the appellate court knows precisely what it is reviewing.

*S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 240-41 (2d Cir. 2001) (internal quotation marks and citations omitted). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Because an injunction is a matter of equitable discretion, even if Plaintiff was successful on his underlying claims, an injunction "does not necessarily follow from success on the merits as a matter of course." *Winter*, 555 U.S. at 32.

The Court will not exercise its discretion to grant such an unduly broad injunction as to prohibit future contact, however legitimate, between the individual Defendants and Plaintiff. *See*

14

*United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) ("The purpose of an injunction is to prevent future violations."). Plaintiff's claim for injunctive relief is DISMISSED.

## VI. Request for Punitive Damages

Plaintiff seeks an award of punitive damages. (Doc. 11 at 10–11.) The individual Defendants move to dismiss this claim arguing the complaint is "devoid" of factual allegations that would support an award of punitive damages. (Doc. 6-1 at 21; Doc. 39 at 9.) Plaintiff responds that he is entitled to punitive damages based on the individual Defendants actions and asserts "actual malicious intent" is not necessary as "negligence or other culpable conduct short of malicious intent" is sufficient. (Doc. 38 at 12.)

"The purpose of punitive damages is to punish the defendant for his willful or malicious conduct and to deter others from similar behavior." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 n.9 (1986). Because punitive damages are reserved for especially egregious conduct, the Vermont Supreme Court has set a high bar for plaintiffs seeking such damages. *See Monahan v. GMAC Mortg. Corp.*, 893 A.2d 298, 316-17 (Vt. 2005). Under Vermont law, punitive damages are appropriate where there has been wrongful conduct that is "outrageously reprehensible" and there is proof of malice. *Fly Fish Vt., Inc. v. Chapin Hill Estates, Inc.*, 996 A.2d 1167, 1173 (Vt. 2010). It is not sufficient that the conduct is wrongful or illegal, *id.*; even "deplorable" conduct has not satisfied the outrageously reprehensible element. *See, e.g.*, *Oakley v. Victory in Jesus Ministries, Inc.*, No. 2009-295, 2010 WL 7794410, at *7 (Vt. July 16, 2010) (vacating punitive damages award). Malice may be shown by conduct exhibiting "bad motive, ill will, personal spite or hatred, or reckless disregard." *Id.* "The imposition of punitive damages is properly committed to the sound discretion of the district court." *Wright v. Musanti*, 887 F.3d 577, 588 (2d Cir. 2018).

15

The Court exercises its discretion to dismiss Plaintiff's claim for punitive damages because the Complaint includes no allegations rising to the level of malice. *See Soojung Jang*, 331 F. Supp. 3d at 350 n.22 (finding failure to allege malice "doom[ed] any request for punitive damages").

## VII. State Constitutional Claim

Lastly, Plaintiff asserts Defendants violated his civil rights as guaranteed by Chapter I, Article 11 of the Vermont constitution when they performed the allegedly "unreasonable and illegal" search and seizures. (Doc. 11 at 1.) Article 11, similar to the Fourth Amendment to the federal constitution, prohibits unreasonable search and seizure. Vt. Const. Ch. I, Art. 11 ("That the people have a right to hold themselves, their houses, papers, and possessions, free from search or seizure"); *see also State v. DuPuis*, 2018 VT 86, ¶ 7, 208 Vt. 196, 201, 197 A.3d 343, 346 (explaining Article 11 is "Vermont's counterpart to the Fourth Amendment to the U.S. Constitution" and "shields against unreasonable government intrusions into legitimate expectations of privacy") (internal quotation marks omitted). In Vermont, the search-and-seizure protection of Article 11 generally "imports the reasonableness criterion of the Fourth Amendment." *State v. Medina*, 2014 VT 69, ¶ 13, 197 Vt. 63, 102 A.3d 661 (internal quotation marks omitted); *see also State v. Edmunds*, 58 A.2d 961, 964 (Vt. 2012) (holding that "reasonable suspicion" test applies to Fourth Amendment and Article 11 claims arising from investigative traffic stop). The Supreme Court of Vermont has adopted the federal qualified immunity test to determine whether state actors are entitled to qualified immunity from state constitutional claims. *See State v. Stearns*, 2003 VT 74, ¶¶ 14-21, 175 Vt. 428, 833 A.2d 835.

Because both Plaintiff's Article 11 and Fourth Amendment claims are subject to the same analysis, the Court does not dismiss them at this stage and will analyze them coextensively under the Fourth Amendment. The Court notes, however, that any damages stemming from a claim

16

brought under Article 11 "would be duplicative of damages stemming from . . . claims [brought] under the federal constitution." *Kent v. Katz*, 146 F. Supp. 2d 450, 464 n. 12 (D. Vt. 2011).

**VIII. Leave to Amend**

The Second Circuit has held that a *pro se* complaint should be read liberally, and district courts should grant leave to amend if a "liberal reading" provides "any indication that a valid claim might be stated." *Cuoco v. Moritsugo*, 222 F.3d 99, 112 (2d Cir. 2000). But where the issues with a complaint are "substantive" and cannot be cured by more artful or specific allegations, repleading would be "futile" and a request for further amendment "should be denied." *Id.*

Although repleading some of Plaintiff's claims would be futile, the Court will allow Plaintiff an opportunity to file a motion for leave to amend his complaint.

## **Conclusion**

For these reasons, Defendant SBPD's Motion to Dismiss (Doc. 5) is GRANTED and the motion to amend caption is DENIED. Defendants Pope and DeFiore's Motion to Dismiss (Doc. 6) is GRANTED in part and DENIED in part. The alternative Motion to Strike (Doc. 6) is DENIED as moot. Defendants' Motion for Judgment on the Pleadings (Doc. 35) is DENIED. The claims remaining are individual-capacity Fourth Amendment and Article 11 claims against Defendants Pope and DeFiore. Plaintiff may file a motion for leave to amend his complaint no later than March 31, 2020.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 3rd day of March, 2020.

/s/ William K. Sessions III
William K. Sessions III
United States District Court Judge